Roger J. Bernstein
*Attorney for Plaintiff*
535 Fifth Avenue, 35th Floor
New York, New York 10017
(212) 748-4800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
YINON RAVID and                          Civ. No.
ALBERT CORPORATION,                 :

                    Plaintiffs,          :          **COMPLAINT**

          -against-                      :

OPENFOLIO CORP.,                     :

                    Defendant.       :
-------------------------------------------------------x

      Plaintiffs Yinon Ravid and Albert Corporation, by their attorney, Roger J.
Bernstein, for their complaint against defendant Openfolio Corp. allege as follows:

<u>Introduction</u>

      1.     "Financial account aggregation" is an internet-based service that gathers a
consumer's financial information from multiple accounts (which  may  include
checking,  savings,  insurance, mortgage,  credit  card, and investment  and  brokerage
accounts).  It presents all of this information on a single web page or mobile application
for "one stop viewing".   Financial account aggregation has been in existence for about
fifteen years.  Publicly owned companies such as Intuit (an S&P 500 company) compete
in the account aggregation arena, which now has tens of millions of customers.  Many
businesses that provide financial account aggregation now offer general financial advice
and recommendations to their customers, and openly earn referral fees from financial
products providers that they recommend.

      2.     Plaintiffs Yinon Ravid and Albert Corporation are developing a service

that provides financial account aggregation and financial product recommendations. Despite the fact that this business model has been in existence for over a decade, Openfolio Corp. has threatened Yinon Ravid and Albert Corporation with a lawsuit alleging "unfair competition, misappropriation of trade secrets, and copyright infringement" as well as breach of contract if they continue to do business in this arena of commerce.  Accordingly, Ravid and Albert Corporation have brought this action for a judgment declaring that they are entitled to continue doing business in the field of web-based and mobile-application based financial account aggregation and financial product recommendations.

Jurisdiction and Venue

3.      Plaintiff Yinon Ravid ("Ravid" or "Plaintiff") is an individual domiciled in Los Angeles, California.

4.      Plaintiff Albert Corporation ("Albert Corp.") is a Delaware corporation with its principal place of business in Los Angeles, California.

5.      Defendant Openfolio Corp. ("Openfolio or Defendant") is a Delaware corporation registered to do business in New York State, with its principal place of business at 259 Bowery, No. 6, New York, NY 10002.   Openfolio has offices only in New York State.  It conducts all of its business operations at the above address and in a shared workspace at 110 East 25th Street, New York, NY 10010.  Its affiliation with New York State is continuous and systematic and the Court has personal jurisdiction over it. Venue lies in this district under 28 U.S.C. § 1391(b)(1) and 1391 (c)(2).

6.      This Court has original, exclusive jurisdiction pursuant to 28 U.S.C. § 1338 over the copyright infringement dispute between Ravid and Albert Corp., on the one hand,  and Openfolio on the other.  It has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the unfair competition, trade secret, and contract breach disputes between Ravid and Albert Corp., on the one hand,  and Openfolio on the other.

Facts

7.     The business of offering a service that aggregates financial accounts in one place for easier ,"at-a-glance" management has existed for nearly fifteen years.  In 2001 an Office of the Controller of the Currency bulletin described account aggregation as follows:

> Account aggregation is a service that gathers information from many Web sites and presents that information in a consolidated format to the customer. The information gathered can range from publicly available information to personal account information (*e.g.*, credit card, brokerage, and banking data).[1]

In 2000 Morgan Stanley Dean Witter provided the following oft-quoted definition of financial account aggregation:

> Web aggregation services are provided by companies – either financial institutions or third-party Internet companies – that [the consumer] can authorize to collect [his] account information so [he] can view it at a single place on the Internet.  [The consumer gives] the Web aggregator [his] account information (which may include checking, savings, insurance, mortgage, credit card, investment and brokerage accounts), [his] ID codes and passwords.  In turn, the Web aggregator collects [his] account information online and allows [him] to access it, with a password, on its Web site for "one stop" viewing.[2]

8.     "Mint.com", which has been in existence since 2007, is an example of a financial account aggregator.  It pulls together an individual's bills, bank accounts, loan accounts, and investment accounts, among others.  Mint.com's website states:

> We gather all your financial information into one place,

---

[1]  http://www.occ.treas.gov/news-issuances/bulletins/2001/bulletin-2001-12.html

[2]  Morgan Stanley Dean Writer Industry Report, at p. 21 (2000) (quoted in Spioto, *Financial Account Aggregation: the Liability Perspective*, VIII Fordham Journal of Corporate and Financial Law 557, at 560 (2003).

3

> giving you the whole picture in a way that's easy to
> understand and take advantage of. Add the accounts, cards
> and bills you'd like. See what you have and what you owe.
> Track your spending patterns, investments and more.[3]

Mint's business model of offering financial account aggregation and financial product

recommendations for which it earns referral fees has been openly documented in its

presentations to investors in 2007.[4]

9.     Similarly, "SigFig", which has been in existence since 2011, offers

investment account aggregation.  Its website offers the following:

> See all your investments in one place
> with our award-winning mobile app.
>
> Hassle-Free Account Management
> Don't move your money! We can manage
> your TD Ameritrade, Charles Schwab or Fidelity account for you.[5]

10.     Thus account aggregation across all kinds of financial accounts, including

investment accounts, is not a novel concept.

11.     Offering recommendations on aggregation websites for such financial

products as credit cards, lenders, insurance products, securities accounts, and

retirement accounts, among others, is also not a novel concept.  Mint.com and

CreditKarma are two examples of websites and mobile applications, that, in addition to

aggregating financial accounts, offer recommendations for financial products such as

retirement accounts, brokerage accounts, insurance companies, credit cards, and

lenders, among others.  These services are ubiquitous:  Credit Karma reported 50

---

[3]  https://www.mint.com/how-mint-works

[4]  http://www.slideshare.net/hnshah/mintcom-prelaunch-pitch-deck

[5]

million subscribed users in the United States in 2016[6], and Mint.com is estimated to have over 15 million users as of 2015, with 10 million reported users in 2012.[7]

12.     Defendant Openfolio was founded in November of 2013.  Openfolio offers "financial portfolio sharing among individuals."  Openfolio:

> aggregates data that investors have shared to create peer investment benchmarks, such as the performance of the average investor."

As described on its website, it permits the user to:

> Compare your portfolio against real people using the Openfolio Investor Average, a benchmark constructed from our community of 60,000 investors.[8]

13.     In September of 2013, Ravid, who was a co-founder of Openfolio, entered into a "Founder Invention Non-Disclosure, Non-Competition and Non-Solicitation Agreement" with Openfolio (the "Proprietary Rights Agreement").  Section 2(a) of the Proprietary Rights Agreement provides as follows:

> all information and know-how, whether or not in writing, of a private, secret or confidential nature concerning the Company's business or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company.

14.     Section 3 of the Proprietary Rights Agreement assigns to Openfolio any "discoveries, ideas, inventions, improvements, enhancements, processes, methods, techniques, developments, and software" that have been "created, made, conceived or

---

[6]  https://www.creditkarma.com/pressreleases

[7]  https://investorjunkie.com/54/mint-com-review/; http://techcrunch.com/2012/08/29/mint-com-tops-10-million-registered-users-70-come-from-mobile-vs-web/

[8]  https://openfolio.com/.

reduced to practice" by Ravid.

15.     Section 4(a)(I) of the Proprietary Rights Agreement is a non-competition

clause that precludes for a period of one year post-employment engaging in any

business that is competitive with "Openfolio's business".  It precludes engaging in any

business that:

> manufactures, markets, licenses, sells or provides any
> product or service that competes with any product or service
> developed, manufactured, marketed, licensed, sold or
> provided, or planned to be developed, manufactured,
> marketed, licensed, sold or provided, by [Openfolio] while
> [Ravid] was employed by [Openfolio]"

16.     In June of 2015 Ravid and Openfolio negotiated a Separation Agreement

and Release (the "Separation Agreement").  Section 8(a) of the Separation Agreement

limited the above non-competition provision in Section 4(a)(I) of the Proprietary Rights

Agreement as follows:

> a. Section 4(a)(I) is hereby amended and restated in its
> entirety as follows: "[Ravid may not] . . . engage or assist
> others in engaging in any business or enterprise that is
> competitive with the Company's Business. For purposes of
> this Section 4(a)(I), the term "Company's Business" shall
> mean the business of owning, operating, marketing and
> developing a mobile and Internet-based technology platform
> that enables financial portfolio sharing among individuals,
> and the aggregation of individual financial portfolios to
> create peer investment benchmarks."

As a result of this amendment to the Proprietary Rights Agreement, Ravid is only

precluded from competing with Openfolio's actual business of financial portfolio

sharing among individuals and the aggregation of individual financial portfolios to

create peer investment benchmarks.  He is not precluded from entering into any other

business.  And because the last twenty-one words of Section 4(a)(I) of the Proprietary

Rights Agreement were deleted by the Separation Agreement, he is not precluded from competing with Openfolio in any business that Openfolio may have planned to develop while Ravid was employed by Openfolio.

17.     Upon Ravid's separation from Openfolio, Openfolio also entered into a license agreement in July of 2015.  This agreement permits Ravid to send emails to Openfolio's customer database as he develops financial services products.  Openfolio had no trade secrets, proprietary information, or other confidential product developments to protect, since it permitted Ravid to communicate freely with its own customers about any financial services product he wished to develop other than its "business of . . . financial portfolio sharing among individuals, and the aggregation of individual financial portfolios to create peer investment benchmarks".  Separation Agreement, Section 8(a).  Until 2016, Openfolio had no objection to Ravid's development of any financial services product other than its peer investment benchmark product.

18.     In the fall of 2015, after the Separation Agreement went into effect, Ravid formed plaintiff Albert Corp. for the purpose of going into the business of financial account aggregation and offering financial account recommendations.  Ravid formed Albert Corp.  and began developing its product at a time when he no longer had any role at Openfolio.  He had not been involved in Openfolio management or day-to-day operations since June of 2015.  He did not use any Openfolio facility, equipment, confidential product information or ideas in developing Albert Corp., as financial account aggregation and financial product recommendation are concepts that have long been publicly known.

7

19.     Albert Corp. does not provide a financial portfolio sharing business for investors.  It does not create or offer peer benchmarks for investors' securities portfolios. Instead, it offers conventional financial account aggregation for individuals, using the same business model as Mint, CreditKarma, Personal Capital, Credit Sesame, and multiple other financial account aggregators.  Like those services, Albert Corp. (through its website and mobile application) offers the ability to connect a user's bank accounts, credit card accounts, loan accounts, retirement accounts, and so forth.  Like Mint.com, CreditKarma, and multiple other services, Albert Corp. may, from time to time, make financial product recommendations to its users and earn referral fees from providers that it recommends.

20.     Openfolio was advised of the nature of the service being offered by Albert Corp. on or about November 1, 2015.

21.     Albert's account aggregation and financial product recommendations service does not use any source code belonging to Openfolio.  Albert's mobile application and Openfolio's mobile application are written in different programming languages.  They use different data providers to facilitate financial account aggregation, which requires that the code and logic for their account aggregation must be different. Any similarities in appearance are due to use of open source providers.

22.     On information and belief, Openfolio has not sought to register a copyright for the computer source code it uses.

FIRST CLAIM FOR RELIEF
(Declaratory Judgment)

23.     Plaintiff Ravid repeats and realleges the allegations of paragraphs 1-22

above as if fully set forth herein.

24.     Pursuant to 28 U.S.C. § 2201, this Court has the power, in a case of actual controversy within its jurisdiction, to declare the rights and legal relations of an interested party seeking such declaration.  This is a case of actual controversy within the Court's jurisdiction.

25.     Financial account aggregation and financial product recommendations do not constitute "private, secret or confidential information or know-how concerning [Openfolio's] business or financial affairs".  (Proprietary Rights Agreement, Section 2). Accordingly, Ravid respectfully requests that the Court declare that he is not in violation of Section 2 of the Proprietary Rights Agreement in developing a financial account aggregation and financial products recommendation service at Albert Corp.

26.     Financial account aggregation and financial product recommendations are not a "discovery, idea, invention, improvement, enhancement, process, method, technique, development, or software" that was "created, made, conceived or reduced to practice" by Ravid (Proprietary Rights Agreement, Section 3).  Accordingly, Ravid respectfully requests that the Court declare that he is not in violation of Section 3 of the Proprietary Rights Agreement in developing a financial account aggregation and financial products recommendation service at Albert Corp.

27.     Financial account aggregation and financial product recommendations do not involve "financial portfolio sharing by individuals".  They do not involve the "aggregation of individual financial portfolios to create peer investment benchmarks." (Separation Agreement, Section 8(a)).   Accordingly, Ravid respectfully requests that the Court declare that he is not in violation of Section 4(a)(i) of the Proprietary Rights

Agreement, as amended by Section 8(a) of the Separation Agreement, in developing a service that provides financial account aggregation and financial product recommendations at Albert Corp.

<u>SECOND CLAIM FOR RELIEF</u>
(Declaratory Judgment)

28.   Plaintiffs Ravid and Albert Corp. repeat and reallege the allegations of paragraphs 1-27 above as if fully set forth herein.

29.   Financial account aggregation is not a trade secret.

30.   Making financial product recommendations on website and mobile applications is not a trade secret.

31.   Openfolio's business of financial portfolio comparisons for peer benchmarking does not rely upon any trade secrets.

32.   Openfolio has failed to identify any alleged Openfolio trade secret that Albert is using in financial account aggregation or in making financial product recommendations.

33.   Neither Ravid nor Albert Corp. is using any trade secret of Openfolio, if any even exist, in the operation of Albert's business.

34.   Accordingly, Ravid and Albert Corp. respectfully request that the Court declare that Ravid and Albert Corp.  are not misappropriating any trade secrets belonging to Openfolio in developing a service that provides financial account aggregation and financial product recommendations.

### THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

35.     Plaintiffs Ravid and Albert Corp. repeat and reallege the allegations of paragraphs 1-34 above as if fully set forth herein.

36.     Ravid and Albert Corp.  have not misappropriated anything belonging to Openfolio and have not misappropriated a commercial advantage belonging exclusively to Openfolio.  Nor have they engaged in any conduct that would cause confusion in the eyes of the public as to their commercial identities.

37.     Accordingly,  Ravid and Albert Corp. respectfully request that the Court declare that Ravid and Albert Corp. are not engaged in unfair competition with Openfolio.

### FOURTH CLAIM FOR RELIEF
(Declaratory Judgment)

38.     Plaintiffs Ravid and Albert Corp. repeat and reallege the allegations of paragraphs 1-37 above as if fully set forth herein.

39.     Plaintiffs Ravid and Albert Corp.  have not copied any source code created by Openfolio.

40.     Accordingly,  Ravid and Albert Corp. respectfully request that the Court declare that Ravid and Albert Corp.  have not violated the Copyright Law, 17 U.S.C. §§ 101 *et sea.*

WHEREFORE, Plaintiffs respectfully request the entry of  judgment as follows:

(a) declaring that Yinon Ravid has not breached the Proprietary Rights Agreement with defendant Openfolio Corp.;

11

   (b) declaring that plaintiffs Yinon Ravid and Albert Corp.  have not misappropriated any trade secrets of defendant Openfolio Corp.;

   (c) declaring that plaintiffs Yinon Ravid and Albert Corp.  are not engaged in unfair competition with defendant Openfolio Corp.; and

   (d) declaring that plaintiffs Yinon Ravid and Albert Corp.  are not infringing on any copyright of defendant Openfolio Corp.;

   Together with the costs of this action and such other relief as is just and proper.

Dated: New York, New York
   May 8, 2016

             _____/s/_____
             Roger J. Bernstein, Esq. (RB 1228)
             *Attorney for Plaintiffs Yinon Ravid and Albert Corp.*
             535 Fifth Ave., 35th Floor
             New York, NY 10017
             Tel: 212-748-4800
             rbernstein@rjblaw.com